v. Dejongh Good morning. Good morning. I'd like to reserve five minutes for rebuttal. That's granted. Judges, three questions must be answered here today. Should a legislator be allowed to use the judicial process to force the executive branch to follow the law? That's the first question. In Dennis v. Lewis, the Third Circuit said yes. In Silver v. Pataki, the New York Court of Appeals said yes. In Coleman v. Miller, the Supreme Court said yes. The answer is yes. The second question is can the rule of law be subjugated for political consideration and practical consideration? Absolutely not. The third question, does the Virgin Islands legislature have the authority to determine where the Supreme Court of the Virgin Islands must be located? Absolutely plain. The arguments in this case are important, judges. Yeah, but the last question is who can raise that issue? Which wasn't one of your questions. Clearly, Senator Russell has standing to raise all the issues. I'm not sure it's that serious. He has suffered an injury caused by the defendant, which is available for judicial redress. Let me ask you this. Didn't Senator Russell admit that the Virgin Islands legislature did not intend to create a private cause of action to enforce Act 6687 in the January 2007 agreement? He said that. He admitted that, didn't he? Yes, Judge. So you're resting on an implied right? Yes. Shouldn't we be rather careful? We believe that the usurpation of the province of the legislature at that point is the overriding consideration. The analysis regarding private causes of action have never been used in cases that have to do with legislature standing. That analysis is generally reserved for regulatory acts such as Title VII and those kinds of acts where private citizens seek to sue based on a violation. This is an act that was enacted by the legislature. The only option that the executive branch had was to follow the law. There is no need to impose a private cause of action. The law is the law. If you violate it, it's a violation. And that is your job today. But how is his vote nullified if he ultimately voted for the nominees? His vote was nullified because he voted for the provision that included the 90-day triggering rule. The provision was voted on which provided for the funds of $5.75 million for the construction of the Supreme Court. In that provision, it included the 90 days within which the governor was supposed to nominate the judges. Which didn't happen. It didn't happen. In that case, his vote was nullified. But how did the late nomination injure a legislator or the legislature? They were free to confirm, to reject, or to delay voting on the nominees. I don't see how there is any injury that would confer standing that arises from the late nomination. Tell me. Explain that to me, please. Well, the late nomination was compounded with the usurpation of the advising consent by the governor. And that was deliberately done, Judge. A little bit of history is important with the facts. When the trigger for the 90 days began on December 15th, it expired on March 15th. The nominations were not done until July. Within that time, there were several avenues that the legislature and Senator Russell used to try to get the governor to comply with the law. There were letters. There were one-on-one conversations. And there were other indications that there was a violation. Now, in ignoring all of those, what the governor did was stretch out the time and just lay low until, not only did he file a lawsuit regarding the placement of the Supreme Court, he waited until 10 days before a general election to call for the confirmation of those judges. The late nomination was not only a nullification, which gives him standing, it was compounded by the usurpation of the separation of powers, wherein, instead of waiting for the advising consent process to be completed, the governor disrupted that process, called for the confirmation of the judges, and what happened at that session was a fait accompli, and he knew that, and it was deliberately done. There were two issues, then, before us. One is the time of the nomination, the timeliness, and the other is the place that the Supreme Court of Virginia was sitting. They are separate issues. And there's another issue, Judge. Help me with that, because where the courthouse is to be is not an issue that I thought was before us. I thought it was before another court, actually. Well, the reason I bring it up, Judge, is because at the hearing before Judge Gomez, before the hearing, Judge Gomez entered an order asking the parties to brief all of those issues, including the placement of the Supreme Court. And although we never got to that argument, facts were developed to that effect, and we think that is before us now. That's the issue, though, that the Supreme Court of the Virgin Islands has taken to itself from the appellate division, is that right? Yes, it is now before the Supreme Court. And that is currently before the Supreme Court of the Virgin Islands. It's before the appellate division, I believe. I thought the Supreme Court of the Virgin Islands took the matter unto itself. I know that the Supreme Court has taken jurisdiction over matters, but it depends on the timing. Matters that were filed before the date of the Supreme Court taking jurisdiction are still with the appellate division. It's still pending, then, before the appellate division? It is pending. Okay. So all we are dealing with, then, is the timing of whether the nomination was timely. That is one of the issues. The other issue is the usurpation of power by the governor with regard to the special session. That was brief. Calling a special session to consider the nomination. Violates separation of powers, is what she's suggesting. Yes. Help me there, as well. You know, just on the surface of it, I'm directing your attention again to injury, the injury resulting from this alleged violation. And it would seem, on the surface at least, that this calling the special session actually increased the power of the legislature. It was another opportunity to act. I don't see that the legislature lost anything or was injured in any way by the calling of the special session to consider the nominations. How is that an injury? The context of the calling of the session, and the fact that 7A of the revised Organic Act, we submit, does not give the governor the authority to call a special session to rule on confirmations that had not been through the advise and consent process. The injury is through Senator Russell, who I didn't mention before. He was chair of the Rules and Judiciary Committee. The Rules and Judiciary Committee is constitutionally delegated to do the review of these judges. That review, which includes public hearing, background checks, review of the judges' ideological underpinnings, and all those things, that was completely disrupted by the calling of the special session. And not only was it disrupted, we submit that the provision that the governor used was not a valid provision, because the heading of the provision is time, frequency, and duration of regular sessions, special sessions, place of holding. The language of the provision says, after it gives the governor the authority to call a special session, no legislation shall be considered at any special session other than that specified. The fact that legislation is mentioned, we submit, is a limitation, because normally the calling of a session is a legislative act. If the governor is given that authority, it must necessarily be limited. And to think that it is so broad as to call it at any time, at any place, even in disruption of other legislative functions, we think that is a violation. And that not only injured Senator Russell as a legislator, it injured him as the chair of the Rules and Judiciary Committee. But I understood Senator Russell to acknowledge that the legislature could have declined to act if it wanted to do that on the nominations. Theoretically, yes, Judge, but it was 10 days before a general election, and that was orchestrated. The machinations of the executive branch is really what is at issue here, because what has happened is the executive branch, and sometimes in collusion with the judicial branch, has so eviscerated the power of the legislature that it is time now to decide whether these branches must coexist rather than be obliterated by one. My question is a follow-up of Judge Stapleton's question. Did Senator Russell raise these issues before the legislature? Absolutely, Judge, on several occasions. And were they rejected by the legislature? They were rejected. Okay, then why does one senator have standing to raise issues that the Senate or the legislature rejected if the legislature is not following the suit? Well, all of the cases that have to do with standing of legislators, there is no requirement that a particular number of senators or legislators must join in the lawsuit. Yeah, but this is only one. If you could file a suit, isn't the legislature a party to the suit that is currently pending in the appellate division? Yes, Judge. So that the legislature could file a suit if it chose to, then why does, I'm still not sure I understand why one senator can file a suit on behalf of the legislature that hasn't joined, and that has rejected that position. It's a question that's already been answered, Judge, in Silver v. Pataki. Well, that's New York court, right? Yes, but the issue was the same. It was also answered in Dennis v. Lewis to a certain extent because there was no indication that the court relied on the fact that eight senators rather than one were suing. The focus was on the type of injury, and the injury to the entire legislature necessarily is shared by every single legislator. And that is the analysis that was assumed in Dennis v. Lewis and also in Pataki. Thank you. You've reserved time. We'll hear from the governor's counsel now. Thank you. Good morning. May it please the court. Good morning, counsel. My name is Tiffany Robinson, and I represent John Dion, Jr., governor of the U.S. Virgin Islands. We are asking this court to affirm the judgment of the district court based upon the arguments made in our brief. Today I will present three main points in support of our position and raise other points as time permits. Okay, speak a little more slowly. Sure. Yes, Your Honor. First, I would like to begin by stating that the appellant lacks standing to assert a claim regarding the untimely submission of the judicial nominees to the Virgin Islands Supreme Court under Act 6687 as this act does not expressly or impliedly create a cause of action for such a claim. The appellant lacks prudential standing as the gravamen of his claim does not fall within the zone of interest protected or regulated by Act 6687. Act 6687 provided that the governor shall appoint, with the consent and advice of the legislature, three judicial nominees to the Supreme Court within 90 days of the appropriation of funds for the construction of the Supreme Court. As the appellant has stated, in December 2005, in Act 6816, the legislature appropriated funds for the establishment and construction of the Supreme Court. While former Governor Charles Turnbull did not nominate Justices Cabret, Swan, and Hodge as Virgin Islands Supreme Court Justices, nothing in Act 6688 provides redress for the untimely submission of the judicial nominees. As the court stated, the appellant acknowledged the fact that Act 6687 does not provide redress for his claim during the July 3rd hearing. Additionally, the appellant stated that the purpose of Act 6687 was to establish the Virgin Islands Supreme Court by local law, which did not exist prior to the passage of Act 6687, and that was consistent with Congress's 1984 amendments to the Revised Against Act, specifically Section 21. The court looked at the language of the statute, as well as the purpose of the statute, in determining that Act 6687 did not imply a cause of action under the factors announced in court and upheld in Touche, specifically looking at the language and the purpose. The district court properly determined that the appellant's claim should be dismissed because Act 6678 did not protect his interest by its language and text. I'm sorry, 6687. I'm sorry, Your Honor. The second point that I would like to raise is that the appellant lacks legislative standing to assert a claim regarding the doctrine of separation of powers. While a claim may be established under the common law, the appellant has failed to state a case of controversy as required under Article III. Does it matter that the governor called the special legislative session to consider nominees before they had gone to the committee as they normally would? The names of the nominees were submitted to the appellant on June 19, 2006. To the appellant in his official capacity? To the appellant in his official capacity as a member of the Virgin Islands Legislature for the purpose of consideration. They were supposed to be considered by the legislature. Unfortunately, despite the great strides by former Governor Charles Turnbull, the appellant rejected, specifically as his role as the chair of the Committee on Rules and Judiciary, rejected attempts by former Governor Charles Turnbull to consider the nominees. I would like to draw the Court's attention to page 73 of the appendix, which indicates that in a letter from Charles Turnbull from the appellant dated October 2, 2005, that he will not consider or he will not allow the committee to consider the judicial nominees at that time. And the time was coming close to the general election. However, that does not mean that former Governor Charles Turnbull did not make strides since July 19 to bring the judicial nominees before the committee and eventually before the Virgin Islands Legislature. Is that your answer then to the timeliness issue that Ms. Russell raised? Which is that they tried to get it in before that 10-day period, but the executive, whichever governor, wasn't able to. Is that what you're trying to say? I'm not referring to the period between March 15 and July 19. I'm speaking to the period after July 19 when the governor made great strides to have the Committee on Rules and Judiciary to consider the judicial nominees. Well, as I understood Ms. Russell's argument, the nominations were made only 10 days before the election. Is that right? No, the nominees... What was the 10-day period? I'm not sure what 10 days she was referring to. Former Governor Charles Turnbull notified the legislature on July 19. Prior to that, consistent with Act 6688, he published notice in the local daily newspaper and other newspapers as required by the Act. Since that time, the appellee has used Section 78 of the Revised Organic Act to put the matter before the Virgin Islands Legislature. At that time, the appellant, along with other members of the Virgin Islands Legislature, voted as to whether or not to consider the matter presented in the call of the special session. At that time, they were advised by their legal counsel that they were not required to act on the call. Despite such advice and despite two unsuccessful motions by the appellant to have these judicial nominees sent back to the Committee on Rules and Judiciary, the legislature spoke and they voted. A majority of the members of the Virgin Islands Legislature voted to consider the call and they subsequently unanimously confirmed the three justices to the Virgin Islands Supreme Court. Now, this act on the part of the Virgin Islands Legislature could not be viewed as a violation of the separation of powers doctrine. As that doctrine, the main principle underlying that doctrine is that other branches may not encroach upon the independent and distinct duties of another branch. And the distinct duty at issue in this case is the ability of the Virgin Islands Legislature to provide advice and to consent to the governor regarding the judicial nominees. They exercised that right and therefore the district court properly concluded that there was no violation of the doctrine of separation of powers with respect to the appellant's argument regarding standing. The third point that I would like to present to the court is that the appellant's declaratory action to void the confirmation hearing of the Supreme Court justices of the Virgin Islands Supreme Court presents a non-justiciable political question. The appellant is not asking this court merely to reverse the decision of the district court but to nullify the votes of the legislature in voting to consider and confirm the justices. Such a request presents a non-justiciable political question as previously stated Act 6687 provides that they have a right to advise the governor regarding these nominees. There is an unusual need to adhere to the political decision already made by the Virgin Islands Legislature on October 27, 2006 during its special session. If this court were to nullify the votes of the Virgin Islands Legislature it would be expressing a lack of respect which is owed to the Virgin Islands Legislature under Baker v. Carr. The appellant had an opportunity to participate in the process and his vote was counted. Despite the fact that he was unable to convince his colleagues that the Supreme Court nominees should be sent back to the committee that does not mean that the process of voting was unlawful in any way. The Virgin Islands Legislature's decision to consider the nominees should be adhered to under the doctrines of separation of power. Any defects in the nomination process was waived or cured by the legislature when it acted to proceed on to consider the judicial nominees. The appellant's request to void the confirmation of the Supreme Court justices presents a non-justiciable question and I would ask this court to affirm the decision of the district court in denying the appellant's claim. Other matters that I would like to raise is that this case is moot at this time. At this time the Virgin Islands Supreme Court was confirmed, sworn in, and the oath was administered by 3rd Circuit Court of Appeals Judge Michael Fisher on December 18, 2006. And since that time on January 26, the Virgin Islands Supreme Court notified the appellee that it would assume jurisdiction over claims from the Superior Court as of January 29, 2007. The Virgin Islands Legislature appealed the decision from the Superior Court after the Virgin Islands Supreme Court indicated that it would assume jurisdiction. Therefore, the decision regarding the location of the Virgin Islands Supreme Court would not go before the Supreme Court. And that matter, I believe as the court stated, is before the appellate division of the district court. Over which the Supreme Court has ultimate jurisdiction? It's my understanding... Can it be appealed? If it was appealed, it's my understanding that it would go before this court. This court? As the decision went from the Superior Court to the appellate division of the district court, and my understanding is that pursuant to Section 1613, the appeal from that case would go to the 3rd Circuit. It's not one of the matters over which the Supreme Court on the Virgin Islands has assumed jurisdiction? Because of the date? Yes, Your Honor. Yes, Your Honor. It's a matter of the timing of the court's submission of the time when it would assume jurisdiction. It was certainly beyond the time when it would consider this case. Another issue I would like to raise is the fact that the appellant raised citizen standing in this matter. The appellant's generalized grievance regarding the government's failure to enforce the law does not confer standing upon the appellant. And this court in Storino upheld that ruling that an appellant cannot make generalized grievances regarding the government's failure to follow the law. And no further statements from the court. If the court has any additional questions. I'm content. Thank you. Thank you, Your Honor. Thank you. Ms. Russell, you've reserved arguments and rebuttal time. Thank you. Why isn't this a non-justiciable legislative matter? We should not take our notice. Aren't you trying to get something here in court that you couldn't get in the legislature? Judge, since the case of Margaret v. Madison, the courts have been able to declare illegal conduct of one branch of government against another branch of government. He very cleverly ducked some of the issue beforehand, but that's an old case. And this is no exception. I'd like to answer some of the questions that you raised earlier. With regard to the injury to Senator Russell, the jurisprudence in this area focuses on whether the legislator is in the zone of interest to be protected, which Senator Russell is. He's a legislator. He's an elected member of the legislature. They also want a nexus. Flats v. Cohen talked about a nexus between the act of the executive branch and that of the person in second standing. There is a connection because the acts of the executive branch were in effect a usurpation of the notification of his vote with regard to the 19-day provision. That is an injury under the case law. Secondly, with regard to the vote for the judges at the illegally convened special session, we submit that since the session was illegally convened, like the fruit of the poisonous tree, from the inception, there's something wrong with the session. All the conduct, the Senate couldn't ratify an illegal act. It was simply political machinations after that. The governor cleverly scheduled it 10 days before the election. This is the 10-day period that we talked about. The governor sent a letter for the special session on October 24 for a session to be held on the 27th, which was 10 days before the general election. It was cleverly timed. The context is important. At that time, the judges, who are well-known and well-respected in the community, had brought all their friends and supporters and family. There was no way that it could have gone any other way. By that time, the violation had already occurred. Thirdly, you asked about whether the timeliness was an injury. Yes, it was. Not only did Senator Russell vote for it, he co-sponsored the provision, which included the 90-day provision. He voted for it. When it was vetoed by the governor, he voted to override it. In three instances, he was invested in this legislation. The governor deliberately flouted that law. The government talked about how he was trying his best to meet the guidelines. There's nothing on the facts that show that. In fact, the facts show the exact opposite. He was written to and told that you're violating the law. Please nominate the people. Senator Russell spoke to him one-on-one as a member of the legislature. There were other indications that he knew that the law was being violated. It was a deliberate act. Like I said earlier, the totality of the governor's acts resulted in a complete nullification of the legislative power. Under that scenario, unless you make a pronouncement that these acts were illegal and unconstitutional, at any given time, the governor can nominate someone and then just a week later call the Senate into special session and force them to confirm this person, a complete violation of the advice and consent. In Dennis v. Lewis, you went to great pains to describe the importance of the advice and consent procedure, which Governor Lewis violated by reappointing someone that the legislature had already rejected. In Dennis, the majority of the legislators were suing him. That is so, but you didn't seem to rely on that to find that the right to advice and consent was invested only in members of the legislature, and since only members of the legislature are bringing this action, the allegations that this right has been usurped by the governor and Golden are sufficiently personal to constitute an injury in fact, thus satisfying the minimum constitutional requirements of standing. Judge, the final thing I'd like to mention is that the case is not new. The fact that everyone has acquiesced with the Supreme Court including all members of the legislature, does not make it new. The constitutional violations have been conducted, they still remain, and they need to be corrected. Otherwise, there will be no balance between the branches of government and we'll just end up with anarchy. Thank you very much. Thank you both. We were very well argued, and we will take this matter for advisement. We have one more matter for today, and it's set for 12 o'clock. We are now at 12 o'clock.